**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

THE ASSOCIATED PRESS; GANNETT
SATELLITE INFORMATION NETWORK
LLC d/b/a USA TODAY; and VICE MEDIA
LLC,

           Plaintiffs,

     v.

FEDERAL BUREAU OF INVESTIGATION,

           Defendant.

Civil Docket No. 16-1850 (TSC)

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................. 1

   I.   The FBI's Efforts to Unlock Syed Rizwan Farook's iPhone ....................................... 1

   II.  The FOIA Requests and the FBI's Responses ............................................................ 3

STANDARD OF REVIEW .................................................................................................. 4

ARGUMENT ........................................................................................................................ 5

   I.   The FBI Conducted a Reasonable and Adequate Search for Responsive Records ...... 5

   II.  The FBI Has Properly Withheld Information Under Applicable Exemptions ............. 7

      A.   The FBI Properly Withheld Information Pursuant to Exemption 1..................... 9

      B.   The FBI Properly Withheld Information Pursuant to Exemption 3................... 12

      C.   The FBI Properly Withheld Information Pursuant to Exemption 4................... 15

      D.   The FBI Properly Withheld Information Pursuant to Exemptions 6 & 7(C)..... 18

          1.   Category (b)(6)-1 & (b)(7)(C)-1: Names and/or Identifying
              Information of FBI Special Agents and Support Personnel..................... 23

          2.   Category (b)(6)-2 & (b)(7)(C)-2: Names and/or Identifying
              Information of Vendor Personnel ........................................................... 24

      E.   The FBI Properly Withheld Information Pursuant to Exemptions 7(E)........... 25

          1.   Category (b)(7)(E)-1: Sensitive FBI Units ............................................. 27

          2.   Category (b)(7)(E)-2: Details Concerning the iPhone Unlocking
              Technology, to Include its Acquisition by the FBI, Its Capabilities,
              and Any Identifies That Could be Tied to the Specific Technology,
              and the Identity of its Vendor ................................................................ 28

   III. The FBI Released All Reasonably Segregable Information ...................................... 31

CONCLUSION.................................................................................................................... 32

## TABLE OF AUTHORITIES

### CASES

*Al-Turki v. DOJ,*
   175 F. Supp. 3d 1153 (D. Colo. 2016) ................................................................. 27

*Allard K. Lowenstein Int'l Human Rights Project v. DHS,*
   626 F.3d 678 (2d Cir. 2010) ......................................................................... 25, 28

*Am. Assoc. of Women, Inc. v. DOJ,*
   167 F. Supp. 3d 136 (D.D.C. 2016) ................................................................... 13

*Am. Civil Liberties Union v. U.S. Dep't of Defense,*
   628 F.3d 612 (D.C. Cir. 2011) .......................................................................... 13

*Am. Civil Liberties Union v. DOJ,*
   265 F. Supp. 2d 20 (D.D.C. 2003) ...................................................................... 8

*Am. Civil Liberties Union v. DOJ,*
   655 F.3d 1 (D.C. Cir. 2011) ........................................................................ 18, 19

*Ancient Coin Collectors Guild v. U.S. Dep't of State,*
   641 F.3d 504 (D.C. Cir. 2011) ........................................................................... 5

*Ass'n of Retired R.R. Workers v. U.S. R.R. Retirement Bd.,*
   830 F.2d 331(D.C. Cir. 1987) .......................................................................... 12

*Baez v. DOJ,*
   647 F.2d 1328 (D.C. Cir 1980) .................................................................... 22, 23

*Baker & Hostetler LLP v. Dep't of Commerce,*
   473 F.3d 312 (D.C. Cir. 2006) ........................................................................... 5

*Barnard v. DHS,*
   598 F. Supp. 2d 1 (D.D.C. 2009) ..................................................................... 26

*Blackwell v. FBI,*
   646 F.3d 37 (D.C. Cir. 2011) ..................................................................... 20, 29

*Blackwell v. FBI,*
   680 F. Supp. 2d 79 (D.D.C. 2010) .................................................................... 28

*Brown v. EPA,*
   384 F. Supp. 2d 271 (D.D.C. 2005) ............................................................. 22, 23

*Campbell v. DOJ,*
  164 F.3d 20 (D.C. Cir. 1998) ............................................................. 20

*Canadian Commercial Corp. v. Dep't of Air Force,*
  442 F. Supp. 2d 15 (D.D.C. 2006) ..................................................... 16

*Canadian Commercial Corp. v. Dep't of the Air Force,*
  514 F.3d 37 (D.C. Cir. 2008) ........................................................ 16, 18

*Chambers v. U.S. Dep't of Interior,*
  568 F.3d 998 (D.C. Cir. 2009) ............................................................. 6

*CIA v. Sims,*
  471 U.S. 159 (1985) ................................................................ 13, 14, 15

*\*Citizens for Responsibility & Ethics in Wash. v. DOJ,*
  160 F. Supp. 3d 226 (D.D.C. 2016) ............................................. *passim*

*Cooper v. DOJ,*
  169 F. Supp. 3d 20 (D.D.C. 2016) ................................................. 21, 22

*Critical Mass Energy Project v. NRC,*
  975 F.2d 871 (D.C. Cir. 1992) .......................................................... 16

*Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.,*
  244 F.3d 144 (D.C. Cir. 2001) .................................................. 16, 17, 18

*Ctr. for Nat'l Sec. Studies v. DOJ,*
  331 F.3d 918 (D.C. Cir. 2003) ...................................................... 8, 9, 10

*DiBacco v. U.S. Army,*
  795 F.3d 178 (D.C. Cir. 2015) ............................................................ 5

*DOJ v. Reporters Comm. for Freedom of the Press,*
  489 U.S. 749 (1989) ..................................................................... 19, 20

*Durrani v. DOJ,*
  607 F. Supp. 2d 77 (D.D.C. 2009) ..................................................... 25

*Elec. Privacy Info Ctr. v. NSA,*
  678 F.3d 926 (D.C. Cir. 2012) ........................................................ 8, 12

*Elec. Privacy Info Ctr. v. DHS,*
  777 F.3d 518 (D.C. Cir. 2015) .......................................................... 20

*FBI v. Abramson*,
   456 U.S. 615 (1982) ................................................................................................ 7

*Fitzgibbon v. CIA*,
   911 F.2d 755 (D.C. Cir. 1990) ........................................................................... 8, 10

*Fitzgibbon v. U.S. Secret Service*,
   Civ. A. No. 86-1886 (HHG), 1992 WL 69306 (D.D.C. Mar. 17, 1992) ................................... 30

*Frugone v. CIA*,
   169 F.3d 772 (D.C. Cir. 1999) ........................................................................... 8, 10

*Gardels v. CIA*,
   689 F.2d 1100 (D.C. Cir 1982) ................................................................................ 14

*Gen. Electric Co. v. Dep't of Air Force*,
   648 F. Supp. 2d 95 (D.D.C. 2009) ............................................................................ 18

*Giovanetti v. FBI*,
   174 F. Supp. 3d 453 (D.D.C. 2016) ........................................................................... 22

*Halpern v. FBI*,
   181 F.3d 279 (2d Cir. 1999) ................................................................................. 21

*Iturralde v. Comptroller of Currency*,
   315 F.3d 311 (D.C. Cir. 2003) ................................................................................. 5

*Jewett v. U.S. Dep't of State*,
   Civ. A. No. 11-cv-1852 (RLW), 2013 WL 550077 (D.D.C. Feb. 14, 2013) ............................ 25

*John Doe Agency v. John Doe Corp.*,
   493 U.S. 146 (1989) ............................................................................................. 7

*Johnson v. Exec. Office for U.S. Attorneys*,
   310 F.3d 771 (D.C. Cir. 2002) ............................................................................... 32

*Jones v. FBI*,
   41 F.3d 238 (6th Cir.1994) .................................................................................... 9

*Judicial Watch, Inc. v. Dep't of Def.*,
   715 F.3d 937 (D.C. Cir. 2013) ............................................................................... 10

*Judicial Watch, Inc. v. FDA*,
   449 F.3d 141 (D.C. Cir. 2006) ........................................................................... 15, 16

*Jurewicz v. U.S. Dep't of Agric.*,
   741 F.3d 1326 (D.C. Cir. 2014) ...................................................................... 16, 18

*Keys v. DOJ*,
   830 F.2d 337 (D.C. Cir. 1987) ................................................................................. 9

*King v. DOJ*,
   830 F.2d 210 (D.D.C. 1987) ......................................................................... 8, 9, 10

\*Kurdyukov v. U.S. Coast Guard*,
   578 F. Supp. 2d 114 (D.D.C. 2008) .................................................. 21, 22, 23, 31

*Larson v. Dep't of State*,
   565 F.3d 857 (D.C. Cir. 2009) ................................................................ 7, 8, 10, 13

*Leopold v. CIA*,
   106 F. Supp. 3d 51 (D.D.C. 2015) ..................................................................... 4, 14

*Light v. DOJ*,
   968 F. Supp. 2d 11 (D.D.C. 2013) ........................................................................... 4

*Mayer Brown LLP v. IRS*,
   562 F.3d 1190 (D.C. Cir. 2009) ............................................................................. 26

*Maynard v. CIA*,
   986 F.2d 547 (1st Cir. 1993) .................................................................................... 9

*McClanahan v. DOJ*,
   No. 14-cv-483, 2016 WL 4574630 (D.D.C. Sept. 1, 2016) .................................... 13

*McCready v. Nicholson*,
   465 F.3d 1 (D.C. Cir. 2006) ...................................................................................... 6

*McDonnell Douglas Corp. v. U.S. Dep't of the Air Force*,
   375 F.3d 1182 (D.C. Cir. 2004) ........................................................................ 16, 17

*Mead Data Ctr. v. U.S. Dep't of Air Force*,
   556 F.2d 242 (D.C. Cir. 1977) ............................................................................... 31

*Meeropol v. Meese*,
   790 F.2d 942 (D.C. Cir. 1986) ................................................................................. 5

*Military Audit Project v. Casey*,
   656 F.2d 724 (D.C. Cir. 1981) ................................................................................. 5

*Miller v. DOJ*,
    562 F. Supp. 2d 82 (D.D.C. 2008) ........................................................................ 27

*Moore v. Bush*,
    601 F. Supp. 2d 6 (D.C. Cir. 2009) ...................................................................... 21

*Morley v. CIA*,
    508 F.3d 1108 (D.C. Cir. 2007) ............................................................................ 9

*National Archives and Records Admin. v. Favish*,
    541 U.S. 157 (2004) ....................................................................................... 21, 22

*Nat'l Ass'n of Retired Fed. Employees v. Horner*,
    879 F.2d 873 (D.C. Cir. 1989) ........................................................................ 22, 24

*Nat'l Parks & Conservation Ass'n v. Morton*,
    498 F.2d 765 (D.C. Cir. 1974) ............................................................................ 16

*Nat'l Sec. Archive Fund v. CIA*,
    402 F. Supp. 2d 211 (D.D.C. 2005) ..................................................................... 31

*Oglesby v. U.S. Dep't of Army*,
    920 F.2d 57 (D.C. Cir. 1990) .............................................................................. 5, 7

*Perrone v. FBI*,
    908 F. Supp. 24 (D.D.C. 1995) ....................................................................... 28, 29

*Perry v. Block*,
    684 F.2d 121 (D.C. Cir. 1982) ............................................................................. 6

*Pub. Emps. For Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n*,
    740 F.3d 195 (D.C. Cir. 2014) ................................................................. 19, 20, 25

*Queen v. Gonzales*,
    No. Civ. A. 96-1387 (JAR), 2005 WL 3204160 (D.D.C. Nov. 15, 2005) ................ 9

*Reed v. NLRB*,
    927 F.2d 1249 (D.C. Cir. 1991) .......................................................................... 19

*Sack v. U.S. Dep't of Def.*,
    823 F.3d 687 (D.C. Cir. 2016) ............................................................................ 20

*SafeCard Servs. Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991) ........................................................................... 6

*Schrecker v. DOJ*,
   349 F.3d 657 (D.C. Cir 2003) ................................................................. 21, 22, 24

*Shapiro* v. *DOJ*,
   153 F. Supp. 3d 253 (D.D.C. 2016) ................................................................. 27, 28

*Shapiro v. DOJ*,
   37 F. Supp. 3d 7 (D.D.C. 2014) ................................................................. 13

*Soghoian v. DOJ*,
   885 F. Supp. 2d 62 (D.D.C. 2012) ................................................................. 30

*Sussman v. U.S. Marshals Serv.*,
   494 F.3d 1106 (D.C. Cir. 2007) ................................................................. 21, 25, 32

*U.S. Dep't of Def. v. FLRA*,
   510 U.S. 487 (1994) ................................................................. 19, 21

*U.S. Dep't of State v. Wash. Post Co.*,
   456 U.S. 595 (1982) ................................................................. 19

*United Technologies Corp. v. U.S. Dep't of Def.*,
   601 F.3d 557 (D.C. Cir. 2010) ................................................................. 16, 17, 18

*Weisberg v. DOJ*,
   745 F.2d 1476 (D.C. Cir. 1984) ................................................................. 5

*Wilbur v. CIA*,
   355 F.3d 675 (D.C. Cir. 2004) ................................................................. 6,

*Wolf v. CIA*,
   473 F.3d 370 (D.C. Cir. 2007) ................................................................. 7, 8, 9

*Yunes v. DOJ*,
   Civ. A. No. 14-1397 2016 WL 4506971 (D.D.C. Aug. 26, 2016) ................................................................. 29

## **STATUTES**

5 U.S.C. § 552 ................................................................. *passim*

50 U.S.C. § 3024(i) ................................................................. 13, 15

## **RULES**

Fed. R. Civ. P. 56(a) ................................................................. 4

## <u>OTHER AUTHORITIES</u>

Executive Order 13,529, 75 Fed. Reg. 707 (December 29,2009)......................................... *passim*

H.R. Rep. 93-1380 (1975) .......................................................................................................... *27*

## INTRODUCTION

This Freedom of Information Act ("FOIA") action relates to actions taken by the Federal Bureau of Investigation ("FBI") during its federal terrorism investigation into the December 2015 attack on the Inland Regional Center in San Bernardino, California.  As part of that investigation, the FBI recovered an iPhone issued to Syed Rizwan Farook, a perpetrator of that attack.  The iPhone was "locked," however, and the FBI could initially not access the device's memory.  In March 2016, a third-party vendor provided the FBI a method by which the agency could access the iPhone as part of its terrorism investigation.

Plaintiffs USA Today, the Associated Press ("AP"), and Vice Media LLC ("Vice Media") (collectively, "Plaintiffs") sought records of agreements and records of expenditure between that third-party vendor and the FBI.  The FBI conducted a search and produced responsive, non-exempt material to Plaintiffs.  The FBI, a component of the U.S. Department of Justice (collectively, "Defendant") is entitled to summary judgment because the FBI has fully complied with its obligations under the FOIA.  The FBI completed a reasonable search for records responsive to Plaintiffs' FOIA requests, and released responsive records in compliance with the processing schedule ordered by this Court.  Moreover, the FBI properly redacted or withheld records pursuant to FOIA exemptions 1, 3, 4, 6, 7(C), and 7(E) and produced all segregable portions thereof.  Therefore, Defendant's motion for summary judgment should be granted.

## BACKGROUND

### I.      The FBI's Efforts to Unlock Syed Rizwan Farook's iPhone

On December 2, 2015, Syed Rizwan Farook and Tashfeen Malik shot and killed 14 people and injured 22 others at the Inland Regional Center in San Bernardino, California.  *See*

1

Gov't's Mot. Compel Apple Inc. To Comply With This Court's February 16, 2016 Order

Compelling Assistance in Search ("C.D. Cal. Mot."), No. 16-CM-10 (SP) (C.D. Cal.), ECF No.

1, at 2.  The FBI led the federal terrorism investigation into the attack.  *See id.* at 4; *see also* FBI

News, "*FBI Will Investigate San Bernardino Shootings as Terrorist Act*," Dec. 4, 2015,

https://www.fbi.gov/news/stories/fbi-will-investigate-san-bernardino-shootings-as-terrorist-act

(last visited Jan. 30, 217).  During that investigation, the FBI discovered an employer-owned

iPhone issued to Farook.  *See* C.D. Cal. Mot. at 5.  The FBI could not search the iPhone,

however, because it was "locked" with a "user-determined, numeric passcode," backed up with a

"user-enabled 'auto-erase function' that would, if enabled, result in the permanent destruction of

the required encryption key material after 10 failed attempts at the entering the correct passcode .

. . ." *Id.*

The FBI initially requested the device manufacturer, Apple, Inc.'s, assistance in

unlocking the iPhone.  *Id.* at 6.  When Apple refused, the government applied for an Order

pursuant to the All Writs Act compelling Apple to assist the FBI.  *Id.* at 6-7  While that Order

was being litigated in the Central District of California, the FBI continued to investigate other

options for accessing the iPhone.  "On Sunday, March 20, 2016, an outside party demonstrated

to the FBI a possible method for unlocking Farook's iPhone." Gov't's *Ex Parte* Application for a

Continuance, No. 16-CM-10 (SP) (C.D. Cal.), ECF No. 191, at 3.  About a week later, on March

28, 2016, the FBI reported that it had "successfully accessed the data stored on Farook's iPhone

and therefore no longer requires the assistance from Apple Inc." that it had originally sought.

Gov't's Status Report, No. 16-CM-10 (SP) (C.D. Cal.), ECF No. 209, at 1.

## II.     The FOIA Requests and the FBI's Responses

Shortly thereafter, three news organizations filed a request for information related to the

FBI's contacts with the "outside party" mentioned in the government's court filings:

- USA Today, by letter dated March 29, 2016, requested: "Complete copies of any records memorializing agreements or expenditures to the 'outside party' that assisted the FBI in unlocking Syed Rizwan Farook's iPhone."  Ex. A. to Decl. David M. Hardy ("Hardy Decl."), at 2 [attached herein].

- The Associated Press, by email dated April 21, 2016, requested: "Any FBI contract, request for proposal, written arrangement or business transaction, signed between the dates of March 20, 2016 and March 22, 2016 for technology used to unlock the iPhone 5C used by Syed Rizwan Farook.  Alternatively, any record of payment, receipt, etc., that the FBI or U.S. government or any entity acting on its behalf made for technique."  Ex. I. to Hardy Decl., at 1.

- Vice News, by email dated April 21, 2016, requested: "A copy of financial documents, including approval forms, decision analysis memorandum, authorization documents, copies of any and all electronic check transfers, associated with the payment made by the FBI for technical assistance in accessing an iPhone that was allegedly owned by one of the suspects in the San Bernardino shooting last year.  You may omit the name and identification of the recipient or recipients."  Ex. M. to Hardy Decl., at 1.

The FBI administratively denied all three requests, on the basis that the requested material is

located in an investigative file which is exempt from disclosure pursuant to 5 U.S.C. §

552(b)(7)(A).  *See* Ex. C. to Hardy Decl. (denying USA Today's request on June 6, 2016); Ex. J.

to Hardy Decl. (denying AP's request on May 11, 2016); Ex. N to Hardy Decl. (denying Vice

News' request on June 6, 2016).  All three organizations administratively appealed the denials

and all three appeals were affirmed.[1]

---

[1] USA Today appealed by email dated June 20, 2016, Ex. D to Hardy Decl, which was denied by the U.S. Department's Office of Information Policy ("OIP") on September 2, 2016, Ex H to Hardy Decl.  The AP appealed by letter dated June 1, 2016, Ex. K to Hardy Decl., which OIP denied on June 6, 2016, Ex. L. to Hardy Decl..  Vice News appealed by electronic submission on June 13, 2016, Ex. O to Hardy Decl., which OIP denied on July 22, 2016, Ex. Q. to Hardy Decl.

Plaintiffs filed suit on September 16, 2016.  *See* Compl., ECF No. 1.  They challenged the FBI's denial of the requests seeking information of records, agreement's, requests for proposals, and records of payment related to the FBI's arrangements with an "outside party" for purposes of unlocking the Farook iPhone.[2]  *See id.*  The FBI filed its Answer on October 24, 2016, and the parties jointly agreed that the FBI would complete a document-by-document review of the relevant materials, which it would complete by January 6, 2017.  *See* Joint Status Rpt., ECF No. 13; Minute Order (Nov. 21, 2016).  The FBI completed processing of Plaintiffs' FOIA requests on January 6, 2017.  *See* Hardy Decl. ¶ 22.  It reviewed 123 pages of material, and released 100 pages in full or in part, with certain information withheld pursuant to FOIA Exemptions 1, 3, 4, 6, 7(C), and 7(E), 5 U.S.C. §§ 552(b)(1), (b)(3), (b)(4), (b)(6), (b)(7)(C), (b)(7)(E).[3]  *Id.*

## STANDARD OF REVIEW

"FOIA cases [are] typically and appropriately are decided on motions for summary judgment."  *Leopold v. CIA*, 106 F. Supp. 3d 51, 55 (D.D.C. 2015); *see also* Fed. R. Civ. P. 56(a).  A court reviews an agency's response to a FOIA request *de novo*.  5 U.S.C. § 552(a)(4)(B).  "The defendant in a FOIA case must show that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information."  *Light v. Dep't of Justice* ("*DOJ*"), 968 F. Supp. 2d 11, 23 (D.D.C. 2013).  "In a FOIA case, a court may award summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations when the affidavits or declarations describe 'the documents

---

[2] "For the purposes of this litigation, Vice has limited the scope of its Request to solely those records also responsive to the USA TODAY Request and the AP Request."  Compl. ¶ 28 n.9

[3] The Hardy Declaration contains a more detailed description of the administrative history of the FOIA requests at issue in this case.  *See* Hardy Decl. ¶¶ 5-22.

and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Id.* at 22 (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).

## ARGUMENT

### I.    The FBI Conducted a Reasonable and Adequate Search for Responsive Records

An agency is entitled to summary judgment with respect to adequacy of its search if it "demonstrate[s] that it made a 'good faith effort to conduct a search . . . using methods which can be reasonably expected to produce the information requested.'" *DiBacco v. U.S. Army*, 795 F.3d 178, 188 (D.C. Cir. 2015) (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).  "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (emphasis in original). The search is thus gauged "not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (quoting *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)).  In short, "[a] search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request." *DiBacco*, 795 F.3d at 194-95 (quoting *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986)).

An agency can establish the reasonableness of its search by "reasonably detailed, nonconclusory affidavits describing its efforts." *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006).  Such affidavits are sufficient if they "set[] forth the search terms and the type of search performed, and aver[] that all files likely to contain

responsive materials (if such records exist) were searched." *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009) (quoting *McCready v. Nicholson*, 465 F.3d 1, 14 (D.C. Cir. 2006)). This standard is not demanding. "[I]n the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice . . . . " *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982). "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted); *see also Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004) ("[M]ere speculation that as yet uncovered documents might exist[] does not undermine the determination that the agency conducted an adequate search for the requested records.").

The Hardy Declaration demonstrates that the FBI has conducted an adequate search for records responsive to Plaintiffs FOIA requests. As the Declaration explained, the FBI divided the requests into two sub-parts: those records pertaining to *agreements* between the FBI and the outside party that unlocked Farook's iPhone, and those records pertaining to *payments* between the FBI and the outside party. Hardy Decl. ¶ 23. The FBI concluded that the "most reasonable means of locating records was to contact the FBI personnel involved with the procurement of the outside party's assistance." *Id.* Accordingly, it consulted with the FBI's Operational Technology Division ("OTD"), the FBI component charged with "deliver[ing] technology-based solutions which enable and enhance the FBI's intelligence, national security, and law enforcement operations." *Id.* ¶ 24. OTD reviewed their records and "locate[d] the contractual information the FBI created while obtaining the outside party's assistance in unlocking Farook's iPhone." *Id.* This information included both the "agreements with the outside party and

payments to the outside party." *Id.* "The FBI concluded that no other offices were likely to maintain responsive records. Thus, the FBI searched the only office likely to maintain the records sought by Plaintiff – *i.e.* OTD – and the records requested by Plaintiff were, in fact, located in that office." *Id.*

This strategy – identifying the personnel responsible for the sought contractual and payment information, asking them to search their records, and securing the relevant documents from them – is a "method[] which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68. Therefore, the FBI is entitled to summary judgment on this issue.

## II.     The FBI Has Properly Withheld Information Under Applicable Exemptions

The FOIA represents a balance struck by Congress "between the right of the public to know and the need of the Government to keep information in confidence." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citation omitted). Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also* 5 U.S.C. § 552(b). Although these exemptions are to be "narrowly construed," *Abramson*, 456 U.S. at 630, courts must not fail to give them "meaningful reach and application," *John Doe*, 493 U.S. at 152.

"An agency that has withheld responsive documents pursuant to a FOIA exemption can carry its burden to prove the applicability of the claimed exemption by affidavit . . . . ." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009). "[S]ummary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail and are not controverted by either contrary evidence in the record nor

by evidence of agency bad faith." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (citation

omitted). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it

appears logical or plausible." *Elec. Privacy Info. Ctr.. v. NSA*, 678 F.3d 926, 931 (D.C. Cir.

2012) (quoting *Larson*, 565 F.3d at 862).

In this case, the information withheld "implicat[es] national security, a uniquely

executive purview." *Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 926-27 (D.C. Cir. 2003)

(noting that "both the Supreme Court and this Court have expressly recognized the propriety of

deference to the executive in the context of FOIA claims which implicate national security"); *see

also Larson*, 565 F.3d at 865 ("Today we reaffirm our deferential posture in FOIA cases

regarding the 'uniquely executive purview' of national security."). The D.C. Circuit has

"consistently deferred to executive affidavits predicting harm to . . . national security, and ha[s]

found it unwise to undertake searching judicial review." *Ctr. for Nat'l Sec. Studies*, 331 F.3d at

927. "[I]n the national security context," therefore, "the reviewing court must give 'substantial

weight'" to agency declarations. *Am. Civil Liberties Union* ("*ACLU*") *v. Dep't of Justice*, 265 F.

Supp. 2d 20, 27 (D.D.C. 2003) (quoting *King v. DOJ*, 830 F.2d 210, 217 (D.C. Cir. 1987)); *see

also Frugone v. CIA*, 169 F.3d 772, 775 (D.C. Cir. 1999) (stating that because "courts have little

expertise in either international diplomacy or counterintelligence operations, we are in no

position to dismiss the CIA's facially reasonable concerns" about the harm that disclosure could

cause to national security); *Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990) (holding that

the district court erred in "perform[ing] its own calculus as to whether or not harm to the national

security or to intelligence sources and methods would result from disclosure"). In according

such deference, "a reviewing court must take into account that any affidavit or other agency

statement of threatened harm to national security will always be speculative to some extent, in

8

the sense that it describes a potential future harm." *Wolf*, 473 F.3d at 374 (citation omitted).

Moreover, the deference owed in cases like this one applies to all relevant exemptions "so long

as the government's declarations raise legitimate concerns that disclosure would impair national

security." *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 928.

The Hardy Declaration included with the FBI's motion provides detailed justifications for

all of the information the FBI has withheld. *See* Hardy Decl. ¶¶ 25-59. The Declaration includes

coded categories of exemptions detailing the nature of information withheld pursuant to the

applicable FOIA exemptions(s), provides a summary of the content of the records, as well as a

summary of the bases for withholdings. *See id.* Courts in the District of Columbia and

elsewhere have repeatedly accepted similar submission from the FBI and other agencies.[4]

Defendant is accordingly entitled to summary judgment with regard to the FBI's application of

exemptions, the specifics of which are explained further below.

### A.    The FBI Properly Withheld Information Pursuant to Exemption 1

The FBI properly withheld classified information pursuant to FOIA Exemption 1.[5] This

exemption protects from disclosure records that are "(A) specifically authorized under criteria

established by an Executive order to be kept secret in the interest of national defense or foreign

policy, and (B) are in fact properly classified pursuant to such Executive Order." 5 U.S.C. §

552(b)(1).

---

[4] *See, e.g.*, *Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007); *Keys v. DOJ*, 830 F.2d 337, 349-50 (D.C. Cir. 1987); *Maynard v. CIA*, 986 F.2d 547, 559 & n.13 (1st Cir. 1993); *Jones v. FBI*, 41 F.3d 238, 242-43 (6th Cir. 1994); *Queen v. Gonzales*, No. Civ. A. 96-1387 (JAR), 2005 WL 3204160, at *3 (D.D.C. Nov. 15, 2005).

[5] Exemption 1 has been asserted on Bates-numbered pages: AP-1-27, 31, 43, 81-106, 108-112, and 116-123. Hardy Decl. ¶ 36 n. 5.

An agency establishes that it has properly withheld information under Exemption 1 if it demonstrates that it has met the classification requirements of E.O. 13,526, the current Executive Order governing the classification of national security information.  "Agencies may establish the applicability of Exemption 1 by affidavit (or declaration)."  *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 940 (D.C. Cir. 2013).  Section 1.1 of the Executive Order sets forth four requirements for the classification of national security information:

> (1) an original classification authority classifies the information;

> (2) the U.S. Government owns, produces, or controls the information;

> (3) the information is within one of eight protected categories listed in section 1.4 of the Order;[6] and

> (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in a specified level of damage to the national security, and the original classification authority is able to identify or describe the damages.

E.O. 13,526 § 1.1(a).  As noted, the Court must accord "substantial weight" to agency affidavits concerning classified information, *King*, 830 F.3d at 217, and must defer to the expertise of agencies involved in national security and foreign policy, particularly to those agencies' articulations and predictive judgments of potential harm to national security, *see, e.g.*, *Larson*, 565 F.3d at 865; *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927, *Frugone*, 169 F.3d at 775; *Fitzgibbon*, 911 F.2d at 766.

---

[6] Those categories are: "(a) military plans, weapons systems, or operations; (b) foreign government information; (c) intelligence activities (including covert action), intelligence sources or methods, or cryptology; (d) foreign relations or foreign activities of the United States, including confidential sources; (e) scientific, technological, or economic matters relating to . . . national security; (f) United States Government programs for safeguarding nuclear materials or facilities; (g) vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to . . .  national security; or (h) the development, production, or use of weapons of mass destruction."  E.O. 13,526 § 1.4(a)-(h).

The Hardy Declaration demonstrates that the FBI has adhered to both the substantive and procedural requirements set forth in Executive Order 13,526 in determining that the information withheld pursuant to Exemption 1 is classified Secret.  Hardy Decl. ¶ 33.

Turning first to the procedural requirements, the Attorney General has designated Mr. Hardy as an original classification and declassification authority.  *See* E.O. 13,526 §§ 1.1(a)(1), 1.3, 3.1; Hardy Decl. ¶ 2.  Mr. Hardy also ensured that all of the administrative and procedural requirements of the Executive Order were followed for this FOIA request, including proper identification and marking of documents.  *See* Hardy Decl. ¶ 32(A) – (E).

The classified information withheld in this case also meets the substantive requirements of Executive Order 13,526.  The withheld information is under the control of the United States Government.  Hardy Decl. ¶ 33; E.O. 13,526 § 1.1(a)(2).  It also falls into a protected category, section 1.4(c) of Executive Order 13,526, as it pertains to "intelligence activities (including covert action), intelligence sources or methods, or cryptography.  Hardy Decl. ¶ 33; *see also id.* ¶ 36 (methods relate to intelligence methods "utilized in this instance to investigate a violent criminal/international terrorist").  As Mr. Hardy explains, "[a]n intelligence activity or method includes any intelligence action or technique utilized by the FBI against a targeted individual or organization that has been determined to be of national security interest." *Id.* ¶ 34.  The information withheld here "would reveal the actual intelligence activities and methods used by the FBI through the efforts of its third party vendor to unlock Farook's iPhone and/or disclose the intelligence gathering capabilities of these activities or methods." *Id.* ¶ 35.  The withheld information is also very specific in nature, provided during a specific time period, and is known to very few individuals.  *Id.*; *see also id.* ¶ 34 (information "was withheld to protect detailed intelligence activity information compiled regarding the FBI's efforts to unlock Syed Rizwan

Farook's iPhone").  Moreover, these intelligence activities or methods "are still used by and/or useful to the FBI today to gather intelligence information."  *Id.*¶ 36.

Disclosure of this information could reasonably be expected to cause serious damage to the national security for several reasons.  First, the information would allow hostile entities to discover the current intelligence gathering methods used, as well as the capabilities and limitations of those methods.  *Id.*  Second, hostile entities could use this detailed information to develop countermeasures which would seriously disrupt the FBI's intelligence gathering capabilities.  *Id.*  Third, disclosure would result in severe damage to the FBI's efforts to detect and apprehend violators of the United States' national security and criminal laws through these very activities and methods, which were used in this instance to investigate a violent criminal/international terrorist and prevent further crimes national security threats.  *Id.*  Accordingly, the FBI has sustained its burden of justifying nondisclosure of the information withheld pursuant to Exemption 1.  *See, e.g.*, *Elec. Privacy Info. Cntr.*, 678 F.3d at 931 ("Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible.").

### B.      The FBI Properly Withheld Information Pursuant to Exemption 3

Exemption 3 protects from disclosure information that is protected by a separate statute, "provided that such statute (i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3)(A).  The "purpose of Exemption 3 [is] to assure that Congress, not the agency, makes the basic nondisclosure decision."  *Ass'n of Retired R.R. Workers, Inc. v. U.S. R.R. Ret. Bd.*,  830 F.2d 331, 336 (D.C. Cir. 1987); *see also id.* ("[T]he policing role assigned to courts in a[n Exemption 3] case is

reduced."). Following the Supreme Court's decision in *CIA v. Sims*, 471 U.S. 159 (1985), courts

apply a two-pronged inquiry when evaluating an agency's invocation of Exemption 3. *See id*. at

167-68. First, the court must determine whether the statute qualifies as an exempting statute

under Exemption 3. Second, the court decides whether the withheld material falls within the

scope of that exempting statute. *See id.*

The FBI properly relies on section 102A(i)(1) of the National Security Act of 1947 (the

"Act"), which requires that "[t]he Director of National Intelligence ["DNI"] shall protect

intelligence sources and methods from unauthorized disclosure."[7]  50 U.S.C. § 3024(i)(1); *see*

Hardy Decl. ¶ 38. The Act also directs the DNI to "establish and implement guidelines for the

intelligence community . . . [for] [c]lassification of information under applicable law, Executive

orders, or other Presidential directives." § *Id.* § 3024(i)(2). The Act is an exempting statute for

the purposes of Exemption 3, so the FBI has satisfied the first of *Sims'* two requirements. See,

e.g., *ACLU v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011); *Larson*, 565 F.3d 857,

865 (D.C. Cir. 2009). Because the "FBI is a member of the intelligence community," its

obligation to protect intelligence sources and methods falls within the Act's ambit. *Shapiro v.

DOJ*, 37 F. Supp. 3d 7, 26 (D.D.C. 2014) (FBI materials that "relates to intelligence sources and

methods" are protected from disclosure pursuant to Exemption 3 and section 102A(i)(1));

*McClanahan v. DOJ*, No. 14-cv-483, 2016 WL 4574630, at *11-12 (D.D.C. Sept. 1, 2016)

(same); *Am. Assoc. of Women, Inc. v. DOJ*, 167 F. Supp. 3d 136, 142-43 (D.D.C. 2016) (same);

*see also* Hardy Decl. ¶¶ 39-40.

---

[7] Exemption 3 has been asserted on Bates-numbered pages AP-1-27, 31, 43, 81-106, 108-112, and 116-123. Hardy decl. ¶ 42 n.9.

The only remaining question is whether the withheld material relates to intelligence sources and methods.  *See Sims*, 471 U.S. at 167-68.  The Hardy Declaration demonstrates that the sought material falls comfortably within the expansive scope of section 102A(i)(1)'s protection of "intelligence sources and methods."  The Supreme Court has recognized the "broad sweep of [section 102A(i)(1)'s] statutory language," as well as the lack of any "limiting language."  *Sims*, 471 U.S. at 169; *see also id.* at 169-70 ("Congress simply and pointedly protected all sources of intelligence that provide, or are engaged to provide, information the Agency needs to perform its statutory duties with respect to foreign intelligence.  The plain statutory language is not to be ignored.").  And this Circuit has gone even further in reading section 102(A)(i)(1) expansively.  As Judge Boasberg recently summarized:

> The D.C. Circuit has interpreted this provision broadly, holding that material is properly withheld under the Act if it "*relates* to intelligence sources and methods," or "can reasonably be expected to lead to unauthorized disclosure of intelligence sources and methods." Courts have also recognized that the Act's protection of sources and methods is a "near-blanket FOIA exemption," which includes the "power to withhold superficially innocuous information on the ground that it might enable an observer to discover the identity of an intelligence source or method." This is so because in the intelligence context "bits and pieces of data may aid in piecing together bits of other information even when the individual piece is not of obvious importance in itself."  The Supreme Court has also warned that "it is the responsibility of the intelligence community, not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the . . . intelligence-gathering process."

*Leopold v. CIA*, 106 F. Supp. 3d at 57-58 (internal citations omitted).  Indeed, the mandate to withhold information pursuant to the National Security Act is broader than the authority to withhold information pursuant to FOIA Exemption 1 and Executive Order 13,526.  *Cf. Gardels v. CIA*, 689 F.2d 1100, 1107 (D.C. Cir. 1982).  This is so because unlike section 1.1(a)(4) of E.O. 13,526, the National Security Act does not require the FBI to determine that the disclosure of the

information would be expected to result in damage to national security.  *Compare* 50 U.S.C. §

3024(i)(1), *with* E.O. 13,526 § 1.1(a)(4).

The FBI has determined that the FBI's intelligence sources and methods would be

revealed if any of the information withheld pursuant to this Exemption were to be released.

Hardy Decl. ¶¶ 40-41.  Moreover, while Exemption 3 does not include a requirement to

articulate harm, Mr. Hardy did just that, concluding that: "disclosure of this information presents

a bona fide opportunity for individuals to develop and implement countermeasures, resulting in

the loss of significant intelligence information, sources, and methods relied upon by national

policymakers and the [intelligence community] to safeguard national security."  *Id.* ¶ 40 n.8.

The FBI is prohibited from disclosing this information under 50 U.S.C. § 3024(i)(1), and this

information was properly withheld pursuant to Exemption 3 (and in conjunction with

Exemptions 4 and 7(E) where applicable.  *See* Hardy Decl. ¶ 41; *see also Sims*, 471 U.S. at 179

("The decisions of the Director, who must of course be familiar with 'the whole picture,' as

judges are not, are worthy of great deference given the magnitude of the national security

interests and potential risks at stake.").

### C.    The FBI Properly Withheld Information Pursuant to Exemption 4

Exemption 4 allows an agency to withhold "trade secrets and commercial or financial

information obtained from a person and privileged or confidential."  5 U.S.C. § 552(b)(4).  "Such

information is exempt only if it meets all three requirements: It must be (1) commercial,

financial, or a trade secret; (2) obtained from a person; and (3) privileged or confidential."

*Citizens for Responsibility & Ethics in Wash.* ("*CREW*") *v. DOJ*, 160 F. Supp. 3d 226, 237

(D.D.C. 2016).  Unlike other types of materials, information implicating Exemption 4 are

generally procured from third parties, rather than developed within the agency.  *Judicial Watch,*

*Inc. v. FDA*, 449 F.3d 141, 148 (D.C. Cir. 2006).  Therefore, the Exemption is intended to protect the interests of both the government and submitters of information.  *See Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 767-70 (D.C. Cir. 1974).

In reviewing material pursuant to Exemption 4, the D.C. Circuit has distinguished between material that has been submitted to the government on a voluntary basis versus that whose submission was mandatory.  *See Critical Mass Energy Project v. NRC*, 975 F.2d 871, 879 (D.C. Cir. 1992) (en banc).  Information submitted in response to a government solicitation, as here, is generally considered to be an involuntary submission.  *See, e.g.*, *McDonnell Douglas Corp. v. U.S. Dep't of the Air Force*, 375 F.3d 1182, 1187 (D.C. Cir. 2004); *Canadian Commercial Corp. v. Dep't of Air Force*, 442 F. Supp. 2d. 15, 29-30 (D.D.C. 2006).  Under such circumstances, information provided on a mandatory basis is confidential "if disclosure would be likely either (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained."  *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 244 F.3d 144, 147-48 (D.C. Cir. 2001) (quoting *Critical Mass*, 975 F.2d at 878).  "The court will generally defer to the agency's predicative judgments as to the repercussions of disclosure."  *Jurewicz v. U.S. Dep't of Agric.*, 741 F.3d 1326, 1331 (D.C. Cir. 2014) (citations and quotation marks omitted).

This Circuit has recognized the sweep of the "substantial competitive harm" requirement.  "[I]t is the law of this circuit that line-item prices do come within Exemption 4."  *Canadian Commercial Corp. v. Dep't of the Air Force*, 514 F.3d 37, 40 (D.C. Cir. 2008).  It also includes information discussing a firm's business techniques, if such information could be used to allow competitors to copy or study such a technique.  *See United Technologies Corp. v. U.S. Dep't of*

16

*Def.*, 601 F.3d 557, 563 (D.C. Cir. 2010); *CREW*, 160 F. Supp. 3d at 239 (affirming Exemption 4

claim that disclosure of information that discusses the "design, operation, capabilities, and

maintenance" of vendor system "would seriously and adversely affect [a company's] competitive

position because a competitor could utilize the information to improve the designs of its products

to better compete with the vendor on future products").  And in evaluating these claims, a court

must be mindful that "pinpoint precision is not required to inflict substantial competitive harm."

*McDonnell Douglas Corp. v. U.S. Dep't of the Air Force*, 375 F.3d 1182, 1193 (D.C. Cir. 2004).

    The FBI has demonstrated that Exemption 4 applies here.[8]  The FBI withheld two

categories of information: (1) proprietary details of how the third party vendor was able to

unlock Farook's iPhone and the breadth of the third party vendor's knowledge and capabilities in

regards to the technology, and (2) the monetary compensation paid to this third party vendor in

order to obtain their assistance.  Hardy Decl. ¶ 43.  The FBI reasonably predicted that releasing

both categories of information would cause the vendor substantial competitive harm.  *See id.* ¶¶

44-47; *Ctr. for Auto Safety*, 244 F.3d at 145-47.  First, the FBI determined that releasing the

proprietary details about how the third party vendor was able to unlock Farook's iPhone would

publicize proprietary technology and methods developed by that vendor.  Hardy Decl. ¶ 44.  This

would cause competitive harm in multiple ways.  One way is that competitors could mimic the

technology and challenge the third party vendor's ability to compete for future, similar

government contractors.  *Id.*  Another is that releasing the breadth of the vendor's knowledge and

capabilities "would allow cellular telephone manufacturing/software companies, such as Apple,

to develop countermeasures to this third party vendor's iPhone unlocking technology."  *Id.*  The

---

[8] Exemption 4 has been asserted on Bates-numbered pages AP-1-22, 24-27, 31, 81, 83,
85, 97-100, 103-106, 108-112, 116, and 118-123.  Hardy Decl. ¶ 47 n.10.

FBI concluded that "[t]his would essentially render this third party vendor's proprietary technology/methods useless," severely hampering its ability to compete in the marketplace in the future.  *Id*.  Such information is properly withheld pursuant to Exemption 4.  *See United Technologies Corp.*, 601 F.3d at 563 (information that would allow competitors to copy a design is exempt pursuant to Exemption 4); *Jurewicz*, 741 F.3d at 1331 ("The court will generally defer to the agency's predicative judgments as to the repercussions of disclosure.") (internal quotation marks omitted); *CREW*, 160 F. Supp. 3d at 240.

The FBI also determined that releasing the amount that the FBI paid this vendor would harm the vendor's competitive advance, since it would enable potential government contractors with similar methods and technologies to judge how they might underbid the third party vendor in the future.  Hardy Decl. ¶ 45.  Courts have repeatedly recognized that this type of pricing information – and this type of competitive harm through future underbidding – is precisely what Exemption 4 is designed to protect.  *See, e.g.*, *Canadian Commercial Corp.*, 514 F.3d at 40; *Gen. Elec. Co. v. Dep't of Air Force*, 648 F. Supp. 2d 95, 102 (D.D.C. 2009).  Finally, the FBI determined that releasing this commercial information "would set a dangerous precedent for future contractors considering providing assistance to the FBI."  Hardy Decl. ¶ 46.  Knowing that this information might be releasable "may dissuade future contractors from working with the FBI, for fear the FBI may publicize their own trade secrets and/or release any other details about their work with the FBI."  *Id.*  This could "impair the Government's ability to obtain necessary information in the future."  *Ctr. for Auto Safety*, 244 F.3d at 148.

**D.    The FBI Properly Withheld Information Pursuant to Exemptions 6 & 7(C)**

"FOIA Exemptions 6 and 7(C) seek to protect the privacy of individuals identified in certain agency records."  *Am. Civil Liberties Union* ("*ACLU*") *v. DOJ*, 655 F.3d 1, 6 (D.C. Cir.

18

2011).  Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6); *see U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599-600 (1982) ("[T]he primary concern of Congress in drafting Exemption 6 was to provide for the confidentiality of personal matters.") (citation omitted).  For this exemption to apply, the information at issue must be maintained in a government file and "appl[y] to a particular individual."  *Id.* at 602.  Once this threshold is met, Exemption 6 requires the agency to balance the individual's right to privacy against the public's interest in disclosure.  *Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991).

The balancing analysis required by Exemption 6 is similar to the balancing analysis required by Exemption 7(C), which authorizes withholding of records compiled for law enforcement purposes if their release "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  This exemption also requires the agency to balance the relevant individual privacy rights against the public interest in disclosure.  *See DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 762 (1989).  That said, "because Exemption 7(C) permits withholding of such records if disclosure would constitute an 'unwarranted' invasion of personal privacy, while Exemption 6 requires a '*clearly* unwarranted' invasion to justify nondisclosure, 'Exemption 7(C) is more protective of privacy than Exemption 6' and thus establishes a lower bar for withholding material."  *ACLU*, 655 F.3d at 6 (quoting *U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 496 n.6 (1994)).

"To fall within any of the exemptions under the umbrella of Exemption 7, a record must have been 'compiled for law enforcement purposes.'"  *Pub. Emps. For Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n* ("*PEER*"), 740 F.3d 195, 202 (D.C. Cir. 2014)

(quoting 5 U.S.C. § 552(b)(7)). "According to the Supreme Court, the term 'compiled' in

Exemption 7 requires that a document be created, gathered, or used by an agency for law

enforcement purposes at some time before the agency invokes the exemption." *Id.* at 203

(citation omitted). "If the agency's principle function is law enforcement" a court is "'more

deferential' to the agency's claimed purpose for the particular records." *Id.* at 203 (citation and

internal quotation marks omitted). This is not a burdensome exercise. Documents were

compiled for law enforcement purposes if they were, for example, "created to prevent crime and

keep people safe," *Elec. Privacy Info. Ctr.. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 156

(D.C. Cir. 2015), "deter illegal activity and ensure national security," *Sack v. U.S. Dep't of Def.*,

823 F.3d 687, 694 (D.C. Cir. 2016), or otherwise show a "rational nexus between the

investigation and one of the agency's law enforcement duties and a connection between an

individual or incident and a possible security risk or violation of federal law," *Blackwell v.*

*F.B.I.*, 646 F.3d 37, 40 (D.C. Cir. 2011) (quoting *Campbell v. Dep't of Justice*, 164 F.3d 20, 32

(D.C. Cir. 1998).

Here, the Hardy Declaration demonstrates that the information withheld pursuant to

Exemption 7 (both the materials withheld pursuant to Exemption 7(C) and those withheld

pursuant to Exemption 7(E)) were compiled for law enforcement purposes. As Mr. Hardy

explains, these records were compiled to facilitate the FBI's unlocking of Farook's iPhone, "in

furtherance of the FBI's investigation of his crime of mass violence/possible internationally-

inspired act of terrorism." Hardy Decl. ¶ 48.

Courts broadly construe the privacy interests protected by Exemptions 6 and 7(C). *See*

*Reporters Comm. for Freedom of Press,* 489 U.S. at 763 (noting that "privacy encompass[es] the

individual's control of information concerning his or her person"). That strong interest is set

against the fact that "the only relevant public interest in the . . . balancing analysis [is] the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Dep't of Def.* v. *FLRA*, 510 U.S. 487, 497 (1994) (citation and internal quotation marks omitted).

The analysis differs slightly with respect to government employees and third parties. This Circuit has "adopted a categorical rule permitting an agency to withhold information identifying private citizens mentioned in law enforcement records, unless disclosure is 'necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity.'" *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir 2003).   Even then, "the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred' in order to gain disclosure." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007) (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004)); *see also Schrecker*, 349 F.3d at 661.  ("On the privacy side of the ledger, our decisions have consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records, including investigators, suspects, witnesses, and informants.").

While government employee names are not subject to a categorical exception, there is a strong presumption against release.  *See Cooper v. U.S. Dep't of Justice*, 169 F. Supp. 3d 20, 36 (D.D.C. 2016).   "Generally, government employees and officials, especially law enforcement personnel, have a privacy interest in protecting their identities because disclosure 'could subject them to embarrassment and harassment in the conduct of their official duties and personal affairs.'" *Moore v. Bush*, 601 F. Supp. 2d 6, 14 (D.C. Cir. 2009) (quoting *Halpern v. FBI*, 181 F.3d 279, 296-97 (2d Cir. 1999); *see also Kurdyukov v. U.S. Coast Guard*, 578 F. Supp. 2d 114,

128 (D.D.C 2008) ("The employee whose name is withheld certainly has a privacy interest in avoiding the disclosure of his or her name"); *see also Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) (noting an individual's significant privacy interest "in avoiding the unlimited disclosure of his or her name and address."). Rather, "[i]t is the requesters obligation to articulate a significant public interest sufficient to outweigh an individual's privacy interest." *Kurdyukov*, 578 F. Supp. 2d at 128. Importantly, it is not enough to claim that revealing the name of the individual shines a light on government, by itself, is a sufficient public interest, as "the D.C. Circuit has time and again rejected the suggestion that the disclosure of names in government investigative files can somehow provide insight into the workings of the government." *Brown v. EPA*, 384 F. Supp. 2d 271, 279 (D.D.C. 2005); *see also Cooper*, 169 F. Supp. 3d at 37 (public interest must be "more specific than having the information for its own sake"). Instead, to overcome this hurdle, the "requestor must produce evidence that would warrant a belief by a reasonable person" that impropriety had occurred and "also must seek information that is 'probative of an agency's behavior or performance.'" *Cooper*, 169 F. Supp. 3d at 37. Absent such a showing, courts routinely affirm redactions of government employee names. *See, e.g., Schrecker,* 349 F.3d at 661; *Baez v. DOJ*, 647 F.2d 1328, 1339 (D.C. Cir 1980) (affirming the application of Exemption 7(C) "to the names of lower and middle-level FBI personnel); *Giovanetti v. FBI*, 174 F. Supp. 3d 453, 461 (D.D.C. 2016) (holding that names of FBI agents is properly withheld absent "evidence sufficient to warrant a belief by a reasonable person that the alleged Government impropriety might have occurred") (quoting *Favish*, 154 U.S. at 159); *Cooper*, 169 F. Supp. 3d at 37-38.

The FBI appropriately withheld the names and/or identifying information of FBI employees and vendor personnel under Exemptions (b)(6) and (b)(7)(C). Hardy Decl. ¶¶ 49-54.

1.      **Category (b)(6)-1 & (b)(7)(C)-1: Names and/or Identifying Information of FBI Special Agents and Support Personnel**

The FBI has protected the names of FBI special agents and support personnel who were responsible for conducting, supervisions, and or maintaining the investigative activities reflected in the documents responsive to Plaintiffs' requests.[9]  Hardy Decl.¶ 52; *see also id.* (responsibilities included compiling information, soliciting investigative assistance from a third party vendor, as well as reporting on the status of the investigation).  The FBI has concluded that FBI special agents and support personnel have substantial privacy interests in being free from unnecessary and unofficial questioning regarding their involvement into the conduct of this and other investigations.  *Id.* ¶¶ 52-53.  The FBI also determined that these individuals could become targets of harassing inquiries for information if their involvement in these investigations was revealed.  *See id.*  Moreover, the FBI concluded that publicity regarding any particular investigation (whether that publicity was positive or negative) could seriously prejudice those individuals' effectiveness in conducting other investigations.  *Id.*  These are unquestionably valid privacy interests for the purposes of Exemptions 6 and 7(C).  *See, e.g.*, *Baez*, 647 F.2d at 1339; *Kurdyukov*, 578 F. Supp. 2d at 128.

By contrast, there is no public interest in the disclosure of the names and/or identifying information of these employees because this information would not significantly increase the public's understanding of the operations and activities of the FBI.  Hardy Decl. ¶¶ 52-53; *see also Brown*, 384 F. Supp. 2d at 279 ("the D.C. Circuit has time and again rejected the suggestion that the disclosure of names in government investigative files can somehow provide insight into the workings of the government").  Therefore, the FBI properly withheld these individuals'

---

[9] Exemptions 6-1 and 7(C)-1 has been asserted on Bates-numbered pages AP-3, 6, 17-18, 23-26, 32-33, 35, 46-47, 58, 60, 80-81, 83, 85, 97, 99, 103, and 122-23.  Hardy Decl. ¶ 53 n.11

names and/or identifying information.  *See Nat'l Ass'n of Retired Fed. Emps.*, 879 F.2d at 879

(noting that privacy interests always prevail in the Exemption 6 balancing analysis if there is no

public interest in disclosure because "something, even a modest privacy interest, outweighs

nothing every time").

> ### 2. Category (b)(6)-2 & (b)(7)(C)-2: Names and/or Identifying Information of Vendor Personnel

The FBI has also protected the names and identifying information of personnel working

for the third party vendor contracted by the FBI to unlock Farook's iPhone.[10]  Hardy Decl. ¶ 54.

The FBI concluded that these individuals "undoubtedly learned non-public details about the

FBI's investigation of Farook," and that "publically releasing these individuals' identifies could

subject them to unwanted, harassing inquiries for unauthorized access to this knowledge."  *Id.*

These individuals privacy interests would be threatened in two additional ways: they may receive

harassing inquiries about how the FBI was able to unlock the Farook iPhone, *id.*, and could also

be targeted for revisal by "criminals associated with and/or sympathetic to Farook, and/or

individuals opposed to the idea of the FBI obtaining the ability to unlock encrypted cellular

phone data," *id.*  On the other side of the balance, the FBI concluded that disclosure of these

individuals' names and/or identifying information would serve no public interest because it

would not shed light on the FBI's operations and activities.  *Id.*  Therefore the FBI properly

withheld this information.  *E.g.*, *Schrecker*, 349 F.3d at 661 (the D.C. Circuit has "adopted a

categorical rule permitting an agency to withhold information identifying private citizens

mentioned in law enforcement records, unless disclosure is 'necessary in order to confirm or

---

[10] Exemptions 6-2 and 7(C)-2 has been asserted on Bates-numbered pages AP-1, 3-4, 6-8, 17-18, 24-25, 81-82, 103-106, and 117.  Hardy Decl. ¶ 54 n.12.

refute compelling evidence that the agency is engaged in illegal activity'."); *see Sussman*, 494 F.3d at 1115.

### E.       The FBI Properly Withheld Information Pursuant to Exemptions 7(E)

To withhold information pursuant to Exemption 7(E), the agency must demonstrate that release of the information "would disclose techniques and procedures for law enforcement investigations or prosecutions," or would "disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).  Courts are divided as to whether the phrase "if such disclosure could reasonably be expected to risk circumvention of the law" applies only to "guidelines" or also applies to "techniques and procedures."  *See PEER*, 740 F.3d at 204 & n.4.  However, the better reasoned decisions recognize that providing categorical protection to "techniques and procedures" (i.e., not requiring a showing that "disclosure could reasonably be expected to risk circumvention of the law") is consistent with both the plain meaning of the statute and the history of the amendments to exemption 7(E) in 1986.  *See Allard K. Lowenstein Int'l Human Rights Project v. DHS*, 626 F.3d 678, 681 (2d Cir. 2010) (finding that the "sentence structure of Exemption (b)(7)(E)" and "basic rules of grammar and punctuation dictate that the  qualifying phrase modifies only the . . . 'guidelines' clause and that "[a]ny potential ambiguity in the statute's plain meaning is removed . . . by the history of the statute's amendments"); *Durrani v. DOJ*, 607 F. Supp. 2d 77, 91 (D.D.C. 2009); *Jewett v. U.S. Dep't of State*, No. 11-cv-1852 (RLW), 2013 WL 550077, at *9 (D.D.C. Feb. 14, 2013).

Even if a showing that "disclosure could reasonably be expected to risk circumvention of the law" were required to protect these "techniques and procedures" from disclosure, the "risk circumvention of the law requirement" presents a "low bar" *See PEER*, 740 F.3d at 204 n.4

(saying that "it is not clear" that the issue of whether an agency needs to show that disclosure of a technique or procedure could reasonably be expected to risk "matters much in practice" given the "low bar" for the circumvention requirement.)  "[T]he text of exemption 7(E) is much broader" than other exemptions that "set a high standard."  *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009).  "[T]he exemption looks not just for the circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for [the] certitude of a reasonably expected risk, *but for the chance of a reasonably expected risk.*"  *Id.* at 1193 (emphasis added).  Thus, Exemption 7(E) "exempts from disclosure information that could *increase the risks* that a law will be violated or that past violators will escape legal consequence."  *Id.; see also id.* at 1194 (requiring the agency to "logically show[] how a risk of circumvention might result")

Furthermore, Exemption 7(E) also permits an agency to withhold information regarding non-public details about commonly-known procedures if the disclosure of such details could reduce or nullify their effectiveness.  *See, e.g.*, *Barnard v. DHS*, 598 F. Supp. 2d 1, 23 (D.D.C. 2009) (recognizing that "[t]here is no principle . . . that requires an agency to release all details concerning these and similar techniques simply because some aspects of them are known to the public").

The FBI has properly withheld information pursuant to Exemption 7(E).  This exemption has been applied to the records at issue here to protect sensitive investigatory techniques and/or procedures used in law enforcement and national security investigations or prosecutions, or would disclose guidelines for law enforcement and national security investigations or prosecutions that could reasonably be expected to risk circumvention of the law.  Hardy Decl. ¶

26

56.  The FBI has withheld two categories of information pursuant to this Exemption: records

relating to sensitive FBI units, and records containing details concerning the iPhone unlocking

technology, including its acquisition, capabilities, identifiers, and the identity of the vendor.  *See*

*id.* ¶¶ 57-58.

### 1.  Category (b)(7)(E)-1: Sensitive FBI Units

In this category, the FBI protected sensitive FBI units involved in the investigations at

issue in this case.[11]  The existence of these FBI units has not been publically acknowledged.  *Id.*

¶ 57; *see also Shapiro v. DOJ*, 153 F. Supp. 3d 253, 273 (D.D.C. 2016) (Exemption 7(E) is

designed to protect information "not 'already well known to the public'") (quoting H.R. Rep. 93-

1380 at 12 (1975)).  The FBI has identified two ways that releasing this information would risk

law enforcement circumvention.  First, "the release of these units would reveal the FBI's

capabilities as it relates to the techniques these units were created to utilize/implement."  Hardy

Decl. ¶ 57.  This would allow criminals to anticipate the use of these techniques, especially in

similar future investigations.  *Id.*; *see also Miller v. DOJ*, 562 F. Supp. 2d 82, 124 (D.D.C. 2008)

(information is properly withheld under Exemption 7E if it would allow a criminal to anticipate

future FBI strategy); *Al-Turki v. DOJ*, 175 F. Supp. 3d 1153, 1201 (D. Colo. 2016) (affirming

withholding of information identifying an FBI unit on the basis that this information would allow

individuals to employ countermeasures).  Second, "considering the FBI has limited investigative

resources, revealing the FBI has created a unit to utilize/implement a specific law enforcement

technique reveals key information about FBI investigative resource allocation."  Hardy Decl. ¶

57.  That knowledge could allow investigative subjects to structure their behavior to avoid the

---

[11] Exemption 7(E)-1 has been asserted on Bates-numbered pages AP-19, 24, 27, 32-33, 3, -81, 83, 85, 97, 99, 118-119, and 131.  Hardy Decl. ¶ 57 n.13.

FBI's investigative strengths and exploit its weaknesses.  *Id.*; *see also Shapiro*, 153 F. Supp. 3d

at 273 (Exemption 7(E) applies to agency "resource allocation" determinations) (quoting *Allard*

*K. Lowenstein Int'l Human Rights Project*, 626 F.3d at 682)).  Because releasing this information

would educate criminals about the FBI's use and reliance on specific techniques, allowing them

to evade the FBI's investigative efforts and circumvent the law, this information is exempt from

disclosure under Exemption 7(E).  Hardy Decl. ¶ 57; *see also Blackwell v. FBI*, 680 F. Supp. 2d

79, 92 (D.D.C. 2010) (upholding FBI's withholdings on the ground that "disclosure potentially

would aid others in circumventing future FBI investigations"); *Perrone v. FBI*, 908 F. Supp. 24,

28 (D.D.C. 1995) (same).

> **2.      Category (b)(7)(E)-2: Details Concerning the iPhone Unlocking Technology, to Include its Acquisition by the FBI, Its Capabilities, and Any Identifies That Could be Tied to the Specific Technology, and the Identity of its Vendor**

The FBI also properly withheld specific information related to the iPhone unlocking

technology, including its acquisition by the FBI, its capabilities, any identifiers that could be tied

to specific technology, and the identity of its vendor.[12]  Hardy Decl. ¶ 58.

First, the FBI protected the details surrounding the acquisition of the technology

(including the monetary amount paid) as well as the means by which the FBI confidentially

funded and obtained the technology.  *Id.* ¶ 58(A).  Revealing the amount paid for the technology

reveals the value that the FBI placed upon it.  "This information would allow criminals to judge

whether the FBI intended to use this technology sparingly or whether the FBI values the

technology for its broad applicability in numerous future investigations."  *Id.*  Accordingly,

criminals could use this information to predict whether or not they need to employ

---

[12] Exemption 7(E)-2 has been asserted on Bates-numbered pages AP-1-6, 9-27, 31, 43, 81, 83-112, and 116-123.  Hardy Decl. ¶ 59 n.14

countermeasures to circumvent the use of the technology in the future.  *Id.; see also Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (information that "could enable criminals to employ countermeasures to avoid detection" was withholdable under Exemption 7(E) since "[t]hese statements logically explain how the data could help criminals circumvent the law").  Furthermore, revealing the methods by which the FBI confidentially paid the vendor and acquired the technology "would allow criminals a means to track the technology back to its source," thus enabling them to root out further sensitive details as to the technology's use, capabilities, and vulnerabilities, diminishing its use to the FBI, and possibly allowing criminals to track and disrupt future confidential FBI payments and technology acquisitions.  Hardy Decl. ¶ 58(A); *see also Yunes v. DOJ*, 2016 WL 4506971, at *7 (D.D.C. Aug. 26, 2016) (affirming FBI Exemption 7(E) claim over disclosure of information that "would provide adversaries with the information necessary to develop methods to disrupt" future law enforcement activities); *CREW*, 160 F. Supp. 3d at 243 (concluding that "funding information and details as to how and what the FBI is acquiring" as part of a law information program is properly withheld under Exemption 7(E)).

Second, the FBI protected details about the capabilities of the iPhone technology – how it accomplishes its intended purpose and the extent of its usefulness.  Hardy Decl. ¶ 58(B).  This could allow criminals to circumvent the technology's usefulness to the FBI in the future, including by enabling them to employ countermeasures, such as different or better encryption technology.  *Id.*  It is well established that information about law enforcement capabilities is protected under Exemption 7(E).  *See, e.g.*, *CREW*, 160 F. Supp. 3d at 242-43; *Perrone*, 908 F. Supp. at 28.

Third, the FBI protected identifiers tied to the specific technology, including product name, product number, FBI contract number, etc.  Hardy Decl. ¶ 58(C).  "Though on its own this information seems innocuous, releasing these identifies provides a means of tracking the FBI's use of this technology in future releases of FBI records (through the FOIA or other avenues), and continued release could allow criminals to judge when, why, and how the FBI utilizes this information in its investigations."  *Id.*  That would allow criminals to judge if, when, and how they needed to employ countermeasures.  *Id.*  Such information is protectable.  *CREW*, 160 F. Supp. 3d at 243-44 (holding that "purchase order numbers, specific contractual terms and conditions, product numbers or codes, product descriptions," etc. are properly withheld under Exemption 7(E) *see also Soghoian*, 885 F. Supp. 2d at 75 ("Knowing what information is collected, how it is collected, and more importantly, when it is *not* collected, is information that law enforcement might reasonably expect to lead would-be offenders to evade detection."); *Fitzgibbons v. U.S. Secret Service*, No. 86-1886 (HHG), 1992 WL 69306, at *1 (D.D.C. Mar. 17, 1992) (recognizing that "information that may appear 'innocuous and unrevealing'" may reveal a law enforcement source or method needing protection) (quoting *Agee v. CIA*, 517 F. Supp. 1335, 1339 (D.D.C. 1981)).

Finally, the FBI protected information relating to the vendor who created the technology. "Knowing the identity of the vendor would allow criminals to familiarize themselves with the vendor's past work and possibly develop countermeasures of the software that proved effective in unlocking Syed Rizwan Farook's iPhone."  Hardy Decl. ¶ 58(D).  Vendor identify information is exempt under 7(E).  *CREW*, 160 F. Supp. 3d at 243-44.

30

III.     **The FBI Released All Reasonably Segregable Information**

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection," 5 U.S.C. § 552(b), unless the non-exempt portions are "inextricably intertwined with exempt portions." *Mead Data Ctr. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977); *Kurdukov*, 578 F. Supp. 2d at 128.  This provision does not, however, require disclosure of records in which the non-exempt information that remains is meaningless.  *See Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 221 (D.D.C. 2005) (concluding that no reasonably segregable information existed because "the non-exempt information would produce only incomplete, fragmented, unintelligible sentences composed of isolated, meaningless words."  The FBI has satisfied this standard.  "A line-by-line review was conducted to identify non-exempt information that could be reasonably segregated from exempt information for release."  Hardy Decl. ¶ 60.  The FBI released 48 pages in full after determining there was no foreseeable harm to an interest protected by a FOIA exemption.  *Id.* ¶ 60(A).  The FBI determined that an additional 52 pages could be released in part with redactions; these pages comprise a mixture of material that could be segregated for release and material that was withheld as release would trigger foreseeable harm to an interest protected by the cited FOIA exemption.  *Id.* ¶ 60(B).  Finally, the FBI determined that 23 pages were required to be withheld in their entirety.  The FBI concluded that all the information on these pages was either fully covered by one or more of the cited FOIA exemptions, or that non-exempt information was so intertwined with exempt information that no information could be reasonably segregated.  *Id.* ¶ 60(C).  "Any further segregation of this intertwined material would employ finite resources only

to produce disjointed words, phrases, or sentences, that taken separately or together, would have

minimal or no informational content." *Id.*

Accordingly, the FBI is entitled to summary judgment on this issue. *See Sussman*, 494

F.3d at 1117 ("Agencies are entitled to a presumption that they complied with the obligation to

disclose reasonably segregable material."); *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d

771, 776-77 (D.C. Cir. 2002) (agency demonstrated there was no reasonably segregable non-

exempt information where it submitted affidavit showing that agency had conducted line-by-line

review of each document withheld in full).

## CONCLUSION

For the foregoing reasons, this Court should grant Defendant's motion for summary

judgment.

Dated:  January 30, 2017                                Respectfully submitted,


                                                        CHAD A. READLER
                                                        Acting Assistant Attorney General

                                                        CHANNING D. PHILLIPS
                                                        United States Attorney for the District of Columbia

                                                        ELIZABETH J. SHAPIRO
                                                        Deputy Director

                                                        */s/ Joseph E. Borson*
                                                        JOSEPH E. BORSON
                                                        Trial Attorney (Virginia Bar No. 85519)
                                                        U.S. Department of Justice,
                                                        Civil Division, Federal Programs Branch
                                                        20 Massachusetts Avenue, NW
                                                        Washington, D.C. 20530
                                                        Telephone:     (202) 514-1944
                                                        Facsimile:     (202) 616-8460
                                                        E-mail:        joseph.borson@usdoj.gov

                                                        *Counsel for the Defendant*

32

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 30, 2017, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of electronic filing to the parties.

/s/ *Joseph E. Borson*
JOSEPH E. BORSON